```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
METLIFE SECURITIES, INC.,

                    Petitioner,
         - against -                      02 Civ. 3018 (JES)

RUSSELL AND SHARON BEDFORD,              MEMORANDUM OPINION
                                              AND ORDER
                    Respondents.
---------------------------------X
```

**SPRIZZO, D.J.:**

Petitioner, MetLife Securities, Inc. ("MSI" or "petitioner"), moves to vacate the arbitration award issued in favor of respondents, Russell and Sharon Bedford ("respondents" or the "Bedfords"), by the arbitration panel assigned by the National Association of Securities Dealers (the "Panel" or the "NASD Panel") in the matter of *Russell and Sharon Bedford v. MetLife Securities, Inc. and Douglas Gismondi*, NASD Arbitration No. 00-05072. Respondents oppose petitioner's motion and cross-move to confirm the NASD Panel's award. For the reasons set forth below, petitioner's motion is denied, and respondents' motion is granted.

## BACKGROUND

Shortly after having received a substantial settlement in a personal injury lawsuit, respondent, Russell Bedford, approached Douglas Gismondi ("Gismondi"), an employee of the Metropolitan Life Insurance Company ("MetLife"), for advice on investing his settlement proceeds. See Aff. of Jeffrey S. Lichtman, dated April 18, 2002 ("Lichtman Aff."), Ex. A, Respondents' Statement of Claim

("Statement of Claim") at 1.  In September 1995, upon the recommendation of Gismondi, respondents purchased from MetLife two $300,000 life insurance policies as well as a variable annuity, into which they made an initial deposit of $200,000. See id.; see also Lichtman Aff., Ex. C, Petitioner's Pre-Hrg. Br. and Mot. for Summ. J. ("Pet. Pre-Hrg. Br.") at 5.

In January and February 1996, respondents loaned Gismondi a total of $7,500 to assist him in starting his own firm, Gismondi & Associates Investments. See Statement of Claim at 2; Pet. Pre-Hrg. Br. at 6, 8.  In January 1996, upon the recommendation of Gismondi, respondents also made a $50,000 investment in Aspen Total Fitness of Montgomery, Inc. ("Aspen"), a local health and fitness club. See Statement of Claim at 2; Pet. Pre-Hrg. Br. at 6-8.  In March 1996, respondents made a second $50,000 investment in another Aspen club. See Statement of Claim at 2; Pet. Pre-Hrg. Br. at 8-10.  Respondents were represented by an attorney in connection with both investments. See Pet. Pre-Hrg. Br. at 8-11.  Aspen eventually declared bankruptcy, rendering the Bedfords' investments worthless. See Statement of Claim at 2.  Gismondi never repaid the $7,500 he borrowed from the Bedfords. See id.  In July 1996, Gismondi's employment with MetLife was terminated. See Pet. Pre-Hrg. Br. at 12.

In November 2000, respondents filed a complaint against

2

MetLife Securities, Inc.[1] and Gismondi with the NASD, seeking $7,500 in compensation for the loans made to Gismondi and $100,000 in compensation for losses incurred in connection with the Aspen investments. See Statement of Claim at 2.  Respondents also sought $100,000 in "consequential damages, interest … , costs, attorneys fees, punitive damages," and any other relief deemed by the Panel to be appropriate. See id.

In responding to the Bedfords' complaint, MSI submitted a Statement of Answer, in which it denied all allegations of wrongdoing raised in the respondents' complaint, and a Pre-Hearing Brief and Motion for Summary Judgment. See Lichtman Aff., Ex. B, Statement of Answer ("Statement of Answer"); Pet. Pre-Hrg. Br. After a two-day hearing, the Panel issued an award in favor of the Bedfords in which it found petitioner and Gismondi jointly and severally liable for payments of $41,023.04 and $43,395.38, plus 9% interest and a payment of $300 to reimburse the Bedfords for the claim filing fee. See Lichtman Aff., Exh. D, the Award.  The Panel also found Gismondi solely liable to the Bedfords for a payment of $6,750.00. See id.

MSI now moves this Court to vacate the award issued by the NASD Panel on the grounds that "the [a]ward manifestly disregarded

---

[1] MSI is a subsidiary of Metlife.  "MetLife and MSI are separate companies.  MetLife is MSI's parent company.  MSI does not control MLIC [MetLife Insurance Company]." Pet. Pre-Hrg. Br. at 5 n.1.

the law and the facts of [the] arbitration and constituted an abuse of the [NASD] Panel's discretion." MSI's Pet. to Vacate Arbitration Award ("Pet. to Vacate") ¶ 10.  Petitioner contends that the evidence presented before the NASD Panel demonstrated that it had no involvement with Gismondi or with the investments that resulted in respondents' financial losses. See id. ¶ 11.  MSI further contends that it could not have been vicariously liable for investment recommendations made to respondents by Gismondi, as Gismondi was not an MSI employee or agent and was not licensed or otherwise authorized to act on behalf of MSI. See id.  Petitioner maintains that the Panel was irrational and disregarded the law and facts of the case, constituting an abuse of discretion. See id. ¶ 13.  Respondents oppose petitioner's motion and cross-move for a confirmation of the Panel's award. See Respondent's Br. in Opp'n. to Petitioner's Mot. to Vacate the Arbitration Award and in Supp. Of Respondents' Cross-Mot. for J. Confirming the Award ("Resp. Br. in Opp.")

## DISCUSSION

The Federal Arbitration Act (the "FAA") identifies the following grounds on which a court may vacate an arbitration award: where the award was obtained through corruption or fraud, where there was evident corruption in the arbitrators, and where any other misconduct prejudicing the rights of any party has occurred. See 9 U.S.C. § 10(a).  If none of the grounds for vacatur specified

4

in the FAA applies, an arbitration award may, nevertheless, be set aside "if it exhibits 'a manifest disregard of the law.'" Goldman v. Architectural Iron Co., 306 F.3d 1214, 1216 (2d Cir. 2002) (quoting DiRussa v. Dean Witter Reynolds, Inc., 121 F.3d 818, 821 (2d Cir. 1997)).  The Second Circuit severely limits the doctrine of manifest disregard of the law, describing it as "a doctrine of last resort--its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply." Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389 (2d Cir. 2003). Generally, the arbitrators' decisions must be granted great deference, see Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004); DiRussa, 121 F.3d at 821, and may be vacated for manifest disregard of the law only if the Court finds both that "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." Wallace, 378 F.3d at 189 (internal quotation marks and citations omitted).  As the Second Circuit Court of Appeals has explained, an arbitral panel's mere "'error or misunderstanding with respect to the law'" does not itself justify vacatur; rather, it must be clear that the panel was aware of a legal principle applicable to the case and either ignored it or refused to apply it. See id. at 189-91.

MSI first contends, though addressing the point only very briefly in its papers, that the Panel's award should be vacated on grounds set forth specifically in the FAA--namely, that the Panel engaged in misbehavior which was prejudicial to the rights of MSI. See MSI's Br. in Supp. of Pet. to Vacate Arbitration Award ("Pet Br. in Supp.") at 12-13; see also 9 U.S.C. § 10(a)(3).  According to MSI, the arbitrators' refusal to hear its motion for a directed verdict during the Panel's hearing was fundamentally unfair, rising to the level of misconduct by which petitioner's rights were prejudiced. See Pet. Br. in Supp. at 12-13.  Having considered this argument, the Court is not convinced that, even if the arbitrators did indeed refuse to hear petitioner's motion for a directed verdict,[2] this decision would have resulted in any serious prejudice to petitioner's rights.  The Court therefore finds that vacatur of the Panel's award is not warranted on this ground.

Petitioner's stronger argument--that the Panel's arbitration award should be vacated because it constituted a manifest disregard of the law--warrants greater consideration.  MSI argues, and it is not seriously disputed, that, unlike its corporate parent MetLife, MSI did not engage in any dealings with the Bedfords, and had no relationship with Gismondi. See Pet. Br. in Supp. at 15-16. It is a basic principle of corporate law that, provided none of the

---

[2] The parties dispute whether the Panel refused to hear petitioner's motion for a directed verdict, see Pet. Br. in Supp. at 1, 2 or simply denied the motion, see Resp. Br. in Opp. at 9.

6

special circumstances recognized by the law is present, a subsidiary cannot be held liable for the acts of its parent company based solely on the subsidiary's membership in the same corporate family.[3]  The Court must therefore agree with petitioner that MetLife, and not MSI, was the proper party to the arbitration proceeding commenced by the Bedfords, and that there was no basis for holding MSI liable for the acts of MetLife or of Gismondi.

Nonetheless, this Court cannot agree with Petitioner that the Panel manifestly disregarded the law and the facts of the arbitration in incorrectly attributing to MSI the liability of its parent company, MetLife.  The first prong of the "manifest disregard of the law" test--that despite their knowledge of a governing legal principle the arbitrators ignored it or refused to apply it--has not been satisfied in this case.  Members of an arbitration panel are not presumed to possess knowledge of corporate law principles.  Rather, in applying the manifest disregard of the law test, an arbitrator "'is ordinarily assumed to be a blank slate unless educated in the law by the parties.'"

---

[3]  See, e.g., 1 William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Corporations § 43 (perm ed., rev. vol. 1999 & 2005 Supp.) ("As a general rule, two separate corporations are regarded as distinct legal entities even if the stock of one is owned wholly or partly by the other."); see also Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996) ("Under the doctrine of limited liability, a corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances, commonly referred to as piercing the corporate veil.") (citing Frank v. U.S. West, Inc., 3 F.3d 1357, 1362 & n.2 (10th Cir. 1993)).

Wallace, 378 F.3d at 190 (quoting Goldman, 306 F.3d at 1216).[4] Therefore, in determining what legal principles were known to the arbitrators for the purposes of applying the manifest disregard of the law test, the Court must impute to the arbitrators "only knowledge of governing law identified by the parties to the arbitration." Duferco, 333 F.3d at 390 (citing DiRussa, 121 F.3d at 823).

Having carefully reviewed petitioner's submissions to the NASD Panel, the Court finds that the NASD Panel was not made aware of the legal principles governing the recognition of affiliated corporations as separate legal entities. See Statement of Answer; Pet. Pre-Hearing Br.; Resp. Br. in Opp., Ex. M, MSI's Response to Claimants' Mem. of Law.  In its submissions to the NASD Panel, petitioner repeatedly stated that it was not involved with the investments made by the Bedfords, that unlike its corporate parent MetLife, it never employed Gismondi, that MSI and MetLife are separate companies, and that MSI does not control Metlife.  See e.g., Statement of Answer at 2, 3, 5; Pet. Hrg. Br. at 2, 3, 5 n.1, 10.  However, petitioner failed entirely to educate the Panel as to the legal principles which ought to have been applied to these

---

[4]   In fact, one need not even be an attorney in order to serve as an arbitrator. See Wallace, 378 F.3d at 190 (noting that "[t]here is certainly no requirement under the FAA that arbitrators be members of the bar").  In this case, it appears that only two out of the three members of the NASD Panel had a legal background. See Resp. Br. in Opp., Ex. M, Arbitrator Disclosure Reports of Thomas R. Farrell, Esq., James N. Baxter, and Marion Yuen.

8

facts--the law governing liability of corporate affiliates, which would have apprised the Panel of the legal significance of the factual arguments made. It is well established that there is no "duty upon arbitrators to ascertain the legal principles that govern a particular claim through the conduct of independent legal research." See Wallace, 378 F.3d at 191 n.3. The Court is therefore unable to conclude that the NASD Panel, having never been made aware of the legal principles governing liability of corporate affiliates, refused to apply or ignored a governing legal principle in finding MSI liable for the acts of its parent company, MetLife. Accordingly, the Court finds that petitioner has failed to demonstrate that the NASD Panel's award was made in manifest disregard of the law, and the decision of the NASD Panel, even if erroneous, must stand.

## CONCLUSION

For the foregoing reasons, the Court denies petitioner's motion to vacate the NASD Panel's award and grants respondents' cross-motion to confirm. The Clerk of the Court is hereby directed to close the above-captioned action.

**It is SO ORDERED.**

Dated:   New York, New York
         October 4, 2006

                                        John E. Sprizzo
                                        United States District Judge

9

**APPEARANCES**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Attorneys for Petitioner
Four Times Square
New York, NY  10036

    JEFFREY S. LICHTMAN, ESQ.

        Of Counsel

MITCHELL H. COBERT, ESQ.
Attorney for Respondents
61 Miller Road
Morristown, NJ  07960